IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Joseph A. Alexander,                    :

        Plaintiff             :        Civil Action 2:11-cv-762

  v.                                    :        Judge Smith

Commissioner of Social Security,         :        Magistrate Judge Abel

        Defendant             :

## Report and Recommendation

Plaintiff Joseph A. Alexander brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying him a period of disability, disability insurance benefits, and supplemental security income. This case is now before the Magistrate Judge for a report and recommendation on the disposition of this matter.

**Summary of Issues**. Plaintiff Alexander filed an application on March 14, 2008 for a period of disability, disability insurance benefits, and supplemental security income, alleging that he had been disabled since August 1, 2003, at the age of 28, by a learning disability, ADHD, anxiety, severe depression, carpal tunnel syndrome in both feet, gout, degenerative disc disease, a back injury, and arthritis. Alexander was 34 years old at the time of the administrative hearing. The administrative law judge ("ALJ") found that Plaintiff retains the ability to perform a limited range of light work involving simple, routine, repetitive tasks, without

production rate or pace work, and limited to no more than occasional interaction with the public and co-workers. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the ALJ failed to give proper weight to the opinion of Plaintiff's treating therapist.

Procedural History. Plaintiff Joseph A. Alexander filed his application for a period of disability and disability insurance benefits, as well as for supplemental security income, on March 14, 2008, alleging that he had been disabled since August 3, 2003 by a learning disability, ADHD, anxiety, severe depression, carpal tunnel syndrome in both feet, gout, degenerative disc disease, a back injury, and arthritis. (R. 278) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On April 27, 2010, an administrative law judge held a hearing at which Plaintiff, represented by counsel, appeared and testified. (R. 43.) A vocational expert and psychologist also testified at the hearing. On May 28, 2010, the administrative law judge issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 15-32.) On June 24, 2011, the Appeals Council denied Plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1.) He thereupon filed this appeal.

Age, Education, and Work Experience. Plaintiff was born on June 23, 1975. (R. 30.) He graduated from high school, after being in special education, in 1994. (R. 284.) He previously worked as an engine assembler in a factory, a deckhand on a river barge, and a laborer at a grain elevator. (R. 51-52.) In 2003 he walked away

from his final job (as a cook) because he was being harassed by customers and did

not wish to become violent.  (R. 53.)

Plaintiff's Testimony.  The administrative law judge summarized Plaintiff's

relevant hearing testimony as follows:

> The claimant became tearful at the start of the hearing.  When asked
> why he was upset he indicated that he was remembering "everything."
> He explained that he remembered seeing his "Pop" close his eyes when
> he died, remembering the child that he never really saw and did not
> have the chance to raise, and now realizing he "is not even fit to be a
> father."  He stated he "just tries to make it from day to day."  The un-
> dersigned noted that after the claimant explained why he was tearful,
> the claimant stopped crying and was able to proceed and participate
> without any further episodes. [...]
>
> The claimant stated he is currently prescribed an anti-anxiety medi-
> cation, anti-depressant, breathing medication and ibuprofen for his
> pain.  The claimant explained that he is only prescribed ibuprofen be-
> cause the doctors did not want to put anything too hard on his stom-
> ach.  He indicated that some days he feels better than others.  He
> reportedly continues to receive mental health treatment at Tri-County
> on a monthly basis.  He noted his mother told him he was suicidal
> when he was younger. [...]
>
> On a good day he cooks, watches television and then crawls up in a
> ball.  He noted that people talk to him and "it is like I'm somewhere
> else."  He stated he would not mind to go back to work and had
> thought about going back to school.  He described high school as "a
> living hell" and indicated that he could not go back.  He noted that
> when he was in school he wanted to take some classes that would have
> helped in college or in life, but his teachers would not let him take
> them.  When asked if he recalled telling Dr. Colburn that he wanted to
> go back to school the claimant stated "I have told a lot of people I plan
> to go back to school."  He indicated that he only feels like going to
> school on good days, but the next day he is back in a "ball" just want-
> ing to be left alone.

(R. 21-22.)

3

<u>Medical Evidence of Record</u>.

Although the administrative law judge's decision fairly sets forth the relevant medical evidence of record, this Report and Recommendation will summarize that evidence in some detail. Plaintiff does not raise, on appeal, any errors relating to his physical condition.

<u>Mental Impairments</u>.

<u>J. Thomas Muehlman, Ph.D.</u> On June 17, 2004, in conjunction with a prior application for benefits, Dr. Muehlman performed a consultative psychological examination at the request of a state disability determination agency. (R. 392-396.) Dr. Muehlman administered intelligence testing, noting that Plaintiff appeared to have put forth his best effort despite a tendency towards impulsive responses. (R. 392.) An administration of the Beck Depression Inventory resulted in a score indicative of severe depression. (R. 394.) Plaintiff reported being on Effexor, although he said it did not help with depression. He stated that he watched TV or played video games, and that he was able to get along well with virtually everyone, but that he felt very stressed. (R. 395.)

Dr. Muehlman concluded that Plaintiff suffered from depressive disorder NOS, as well as a personality disorder NOS with schizoid traits. He opined that Plaintiff was moderately impaired in his ability to deal with work stress, to maintain his personal appearance, and to behave in an emotionally stable manner. He opined further that Plaintiff was mildly impaired in his ability to relate to cowork-

ers, deal with the public, use judgment, deal with supervisors, maintain concentration, and understand, remember, and carry out simple job instructions. Dr. Muehlman also opined that Plaintiff was moderately to markedly impaired in his ability to demonstrate reliability. (R. 395.)

Tri-County Mental Health. Plaintiff received care at Tri-County Mental Health and Counseling Services from approximately January 2006 until September 2008. Except as otherwise noted, the names of providers are illegible in the record.

On January 25, 2006, Plaintiff received an intake diagnostic assessment at Tri-County. (R. 551-558.) He reported a depressed mood since the age of eight, with symptoms such as diminished energy, insomnia, memory disturbance, and feelings of hopelessness and worthlessness, and stated that he tended to isolate himself due to his depression. (R. 551-52.) Tri-County personnel noted a pattern of major depression resolving into dysthymia, and recommended individual counseling. (R. 557.)

Treatment notes from an August 14, 2006 interview stated that Plaintiff reported that he had suffered reduced concentration and motivation for the last six months. He had suffered a chaotic childhood, with physical abuse by a stepfather, and had a violent temper. Plaintiff reported that he engaged in tattooing as a form of self-mutilation. (R. 592.) The examining psychiatrist noted that there was no evidence of psychosis or suicidality, and that Plaintiff had demonstrated interest in education and in securing a stable future. She prescribed Wellbutrin to target mood, and Lunesta for improved sleep, with a follow-up in five weeks. (R. 590.)

On September 19, 2006, Plaintiff returned to Tri-County for a follow-up appointment. He reported that the Wellbutrin and Lunesta had not helped, and that there had been no change in his mood and motivation. He reported feeling sad and overwhelmed. His provider discontinued Wellbutrin and Lunesta, and started Plaintiff on Cymbalta and Trazodone, recommending a follow-up in one month. (R. 588-89.)

On October 18, 2006, Plaintiff returned to Tri-County for a follow-up appointment. His provider noted that Plaintiff reported a better mood and much improved sleep. However, he was concerned about attention symptoms, reporting distractability, fidgeting, daydreaming, impatience, and losing things frequently. (R. 586.) The provider noted that his depression was in partial remission, and recommended that he return in one month. (R. 587.)

On February 8, 2007, a provider at Tri-County completed an adult diagnostic assessment form to note a change of diagnosis. Plaintiff was diagnosed with major depressive disorder, recurrent, mild, and dysthemic disorder. (R. 545.)

On April 4, 2007, Plaintiff returned to Tri-County. The provider noted that Plaintiff had a constricted affect but a brighter and more relaxed appearance. (R. 579.) However, Plaintiff reported continued significant insomnia. (R. 580.)

On May 3, 2007, at another follow-up appointment, Plaintiff reported that with the addition of Klonopin to his medication he had been feeling better, with a significant reduction in anxiety. (R. 578.) At a follow-up appointment on June 7, 2007, Plaintiff reported that he was continuing in counseling and that Klonopin had

been helping with his anxiety.  (R. 576.)

However, after a long break between visits, including running out of Klon-opin and reducing his Cymbalta dose to stretch the supply, Plaintiff returned to Tri-County on October 1, 2007.  He reported renewed sleeping problems and some crying.  A new treator, Dr. Colburn, diagnosed Plaintiff with dysthymia, major depressive order, recurrent, and personality disorder, not otherwise specified, with borderline traits.  (R. 574.)

At a follow-up appointment on October 30, 2007, Plaintiff reported to Dr. Colburn that he had multiple stressors, and that his depression was evident at least half the time, but that his mood was better overall.   (R. 572.)  At a November 28, 2007 appointment, Plaintiff reported that he "has been feeling more focused", and that his home situation was stable.  (R. 570.)

On January 8, 2008, Plaintiff returned to Tri County.  Dr. Colburn noted that Plaintiff reported "some sadness around the holidays", but that "his medications seem to be working well."  Plaintiff stated that he was planning to return to school, and that he had no suicidal or homicidal ideation.  He continued to struggle with insomnia.  (R. 568.)  Plaintiff did not see Dr. Colburn again until April 22, 2008, when he reported his overall mood as "fair".  He stated that he often isolated himself from others, but that he preferred doing so.  (R. 564.)  Dr. Colburn noted that Plaintiff's affect was worried, but that his mood was possibly euthymic.  (R. 563.)  Plaintiff reported at a June 17, 2008 follow-up that his panic attacks were diminished by the Klonopin, and that his mood was usually "mellowed out", but

7

that he had suffered some reduction in interests and hobbies. (R. 562.) Dr. Colburn rated Plaintiff's mood euthymic and his affect calm, and recommended a follow-up appointment in three months. (R. 561.) At a September 9, 2008 follow-up appointment, Plaintiff reported to Dr. Colburn that "overall he seems to be doing well", and that, although he still tended to isolate himself, his home situation was stable. (R. 560.)

R. Kevin Goeke, Ph.D. On September 26, 2006, Dr. Goeke, a state agency psychologist, completed a psychiatric review form. (R. 431-38.) He found Plaintiff to exhibit recurrent major depression and dysthymia. (R. 431.) Dr. Goeke opined that Plaintiff had moderate difficulties in maintaining social functioning and concentration, but only mild restriction on activities of daily living. (R. 431.) As to vocational tasks, Dr. Goeke found that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and -week without interruptions from psychologically based symptoms, to interact appropriately with the general public, to get along with coworkers without distracting them, and to respond appropriately to changes in the work setting. (R. 435-36.) Dr. Goeke concluded:

> Clmt is a 31 yr old male alleging anxiety, depression, learning, and physical issues. Psych allegations are credible in nature but not severity. Clt has 12th grade special education and has worked on a barge and as a cook. No hx of IP psych tx but has been treated with psychotropics.
>
> The medical evidence shows that clmt has had a low mood, poor sleep,

> decreased memory, decreased energy, libido, and decreased motivation. There is no mania, no psychosis, and no evidence of suicidality. His tattooing is a form of self mutilation. Has a history of substance abuse until his recent diagnosis of gout. Now he has rare use. His stressors are numerous losses in the past five years: financial, distance from family, and a relationship. Dx of depression; no Axis II dx given.
>
> In third party ADL's she says, clmt has an average ability to follow instructions. Report says he has no trouble getting along with others. He doesn't handle stress well, it causes him to shift himself away from others. She occasionally has to remind him to take his medication. Third party is felt credible.
>
> MRFC limited to simple and routine tasks in a low social demand setting w/o strict time pressures or production quotas.

(R. 437.) On April 20, 2007, Dr. Vicki Casterline, Ph.D., a state agency physician, reviewed and affirmed Dr. Goeke's opinion. (R. 447.)

Gary S. Sarver, Ph.D. On May 27, 2008, Dr. Sarver performed a psycho-logical evaluation on Plaintiff at the request of a state disability determination agency. (R. 476.) Dr. Sarver noted that Plaintiff's appearance was unremarkable, and that his speech and language were within normal limits with no indications of thought disorders or flight of ideas. Plaintiff's affect was constricted but otherwise within normal limits in terms of range and appropriateness, and his mood was subdued with no emotional lability. He reported hopelessness and helplessness, with poor energy and frequent crying. Dr. Sarver noted no motoric indications of depression or anxiety. Plaintiff reported only low lethality suicidal ideation, and denied any homicidal ideation. (R. 478.)

Dr. Sarver evaluated Plaintiff's cognitive functioning, finding intact orien-tation to person, place, time, and situation, and intact memory registration. (R.

479-80.)  He noted specifically that Plaintiff had no difficulty in filling out the release of information form.  (R. 479.)  Dr. Sarver concluded that Plaintiff's ability to relate to others and to manage daily work stresses appeared to be moderately impaired by dysthymia, but that his ability to understand and follow simple job instructions, and to perform simple, repetitive tasks appeared not to be impaired. He assessed Plaintiff with a GAF of 51.  (R. 481.)

Alice Chambly, Psy.D.  On June 12, 2008, Dr. Chambly, a state agency psychologist, performed a mental residual functional capacity assessment based upon Plaintiff's medical record.  (R. 518-536.)  She determined that Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions, as well as his ability to work in coordination with or in proximity to others without distraction, to complete a normal workday and -week without interruptions from psychologically based symptoms, to interact appropriately with the general public, to accept instructions and criticism from supervisors, and to respond appropriately to changes in the work setting.  (R. 518-19.)  Dr. Chambly found for purposes of the listings that Plaintiff had moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, and mild restrictions on activities of daily living.  (R. 533.)

Dr. Chambly concluded that Plaintiff's social interaction and ability to handle stress were poor, but that Plaintiff "would have no problem performing simple, routine tasks on a daily basis".  She also opined that Plaintiff's treating source opinions were given "limited weight as they are not consistent with claimant's level

of functioning". (R. 520.) On October 5, 2008, Dr. Mel Zwissler, Ph.D. reviewed and

affirmed Dr. Chambly's opinion. (R. 594.)

Bonnie de Lange, PCC. Ms. de Lange supplied a letter dated December 31,

2009, which stated that she had been working in a counseling relationship with

Plaintiff since February 7, 2006, spanning approximately thirty-eight counseling

sessions. She opined:

> Joseph has worked consistently in counseling and has delineated goals
> that, if achieved, would enable him to become more independent,
> increase self-confidence and self-esteem and to attempt to return to
> work. Although he has been compliant and has made a long-term
> commitment to treatment, it appears as though he is unable to make
> and maintain progress in developing the skills needed to obtain gainful
> employment. He has consistently requested case management help
> with completion of paperwork, resolving unhealthy housing issues and
> resolving conflict with landlord and neighbors. It appears as though
> he attempts to resolve issues on his own, but his case history indicates
> that he is often unable to do this. There have been brief periods when
> he verbalizes a desire to make progress and move forward, however,
> these periods have generally been short-lived and, in my opinion, he
> has not demonstrated that he has that ability.
>
> Based on my work with the above individual, it is my opinion that he is
> disabled.

(R. 668.)

Jeffery Freemont, Ph.D. Dr. Freemont, a psychologist, testified by telephone

at Plaintiff's hearing before the administrative law judge. He reviewed Plaintiff's

record, and asked questions of Plaintiff at the hearing concerning his medications.

(R. 57-58.) Dr. Freemont opined that Plaintiff did suffer from dysthymia, but that it

was situational and he did not meet the criteria for a listed impairment. When

asked by the ALJ, Dr. Freemont stated that he did not believe Bonnie de Lange's

11

assessment, noting that he gave little credibility to her statements that Plaintiff

had difficulty managing paperwork based upon his record. (R. 59-60.)

**Administrative Law Judge's Findings**. The administrative law judge found

that Plaintiff had the severe impairments of dysthymia, degenerative disc disease

and degenerative joint disease of the lumbar spine, learning disability, hiatal

hernia, gout in the right first toe, and status post tarsal tunnel surgery. (R. 18.) He

concluded, with respect to Plaintiff's mental impairments, that they did not satisfy

the listing criteria.

In making his decision, the ALJ found that Alexander was not entirely

credible:

> [A] record show[ed] that the claimant reportedly was receiving Social
> Security benefits. The undersigned asked the claimant if he had ever
> been on Social Security, to which the claimant replied "no sir." He
> reportedly receives food stamps and his girlfriend receives Social
> Security. . . .
> . . .
> The objective findings do not support the extreme limitations alleged
> by the claimant and reveal that he is not entirely credible.
> . . .
> [T]he record showed history of alcohol abuse that reportedly resolved
> when the claimant was diagnosed with gout. The claimant was noted
> to be interested in education and securing a stable future. He was
> diagnosed with major depressive disorder, recurrent and moderate and
> dysthymic disorder (Exhibit 20F). The undersigned noted the eval-
> utator's signature and credential were illegible. The undersigned also
> noted the numerous inconsistent statements regarding substance
> abuse. At times the claimant denied alcohol and street drug use and/or
> abuse; however, at other times the claimant reported alcohol abuse
> and marijuana use. The undersigned finds the inconsistent statements
> reflect poorly on the claimant's credibility.

(R. 22 and 26.)

The ALJ gave "significant weight" to the opinions of examining psychologist Dr. Gary Sarver, "weight" to the opinions of non-examining psychologists Drs. Goeke and Casterline, and "great weight" to the opinions of non-examining psychologists Drs. Chambly and Zwissler, finding all of these consistent with the record as a whole. (R. 29.) The ALJ concluded that Plaintiff had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. (R. 19.)

The ALJ determined that Plaintiff retained the capacity to perform light work involving simple, routine, repetitive tasks, without production rate or pace work, and limited to no more than occasional interaction with the public and co-workers. (R. 20.) Based upon these stated limitations, the testifying vocational expert concluded that Plaintiff was unable to perform any past relevant work, but that a significant number of jobs existed in the national economy which he could still perform. The ALJ adopted this opinion and found that Plaintiff was not disabled. (R. 32.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. ..." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197,

229 (1938)). It means "'more than a scintilla.'" *LeMaster v. Weinberger*, 533 F.2d

337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon

the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston*

*v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437,

439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in

the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Educa-*

*tion and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp.*

*v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Serv-*

*ices*, 755 F.2d 495, 497 (6th Cir. 1985).

Plaintiff's Arguments. Plaintiff argues that the ALJ unreasonably gave little

weight to the opinion of his treating therapist, Ms. de Lang.

Analysis. The sole matter at issue in this appeal is whether the ALJ erred in

giving little weight to the opinion of Ms. de Lang, Plaintiff's treating therapist.

Counselors such as Ms. de Lang are not "acceptable medical sources" for purposes of

20 C.F.R. 404.1513(a). Nevertheless, 404.1513(d) mandates that "[i]n addition to

evidence from [acceptable medical sources]... we may also use evidence from other

sources to show the severity of your impairments and how it affects your ability to

work." Under SSR 06-3p, only "acceptable medical sources" can give medical

opinions or provide evidence to establish the existence of a medically determinable

impairment. However, counselors qualify as "other sources", and "information from

14

such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."

Here, the ALJ reviewed and properly evaluated Ms. de Lange's letter in his opinion. He noted at the outset that she was not an acceptable treating source under 404.1513, but "further considered Ms. de Lange's opinion in light of SSR 06-03." (R. 29.) However, he gave her opinion little weight for three reasons: (1) although Ms. de Lange represented that she had seen Plaintiff approximately once a month for two years, the record reflected only one such appointment; (2) Ms. de Lange purported to conclude that Plaintiff was disabled, a determination reserved to the Commissioner under 20 C.F.R. 404.1527(e) and 416.927(e); and (3) Ms. de Lange's opinion as to Plaintiff's long-standing, ongoing struggle with his depression was inconsistent with the Tri-County treatment records that showed improvement in symptoms and overall satisfactory functioning. (R. 29-30.) Although counsel requested a supplemental hearing to give Ms. de Lange the opportunity to offer a detailed explanation for her opinion, the ALJ denied the request in light of the reasons he cited for discounting her opinion.

Plaintiff cites the "treating physician rule", which holds generally that the opinion of a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). He also notes 20

15

C.F.R. 404.1527(d), which provides that more weight should be granted to the opinions of a treating source than to the opinion of a source who has not examined a claimant, and caselaw providing that when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion, remand is proper. *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

Any application of the treating physician rule here, however, is incorrect, as Ms. de Lange is plainly not an "acceptable medical source". Even under SSR 06-03p, "only 'acceptable medical sources' can be considered treating sources... whose medical opinions may be entitled to controlling weight." The ALJ, in his opinion, gave great significant weight to the opinion of Dr. Sarver, who performed an examination of Plaintiff and concluded that Plaintiff retained the ability to perform simple work, and weight to the opinions of Drs. Goeke and Chambly, the non-examining state agency psychologists. He found that their opinions were consistent with the record as a whole. Plaintiff's entire argument appears to be based upon the mistaken premise that Ms. de Lange's letter qualified as, or should be considered equivalent to, a treating medical opinion conflicting with those of Drs. Sarver, Goeke, and Chambly. Under the regulations, however, it was not, and could supply only information to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. The ALJ not merely did not, but could not, err in failing to give proper weight to Ms. de Lange as a treating medical source.

Plaintiff argues also that the ALJ erred in not seeking additional evidence or

clarification regarding the extent to which Plaintiff had actually received counseling from Ms. de Lange on his numerous visits to Tri-County.  He cites 20 C.F.R. §404.1512(e), which provides that the ALJ must seek "additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically accept-able clinical and laboratory diagnostic techniques."  This regulation, however, states that it applies to a "treating physician or psychologist or other medical source", which includes only treating sources.  *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272-73 (6th Cir. 2010), citing SSR 96-5p.  A counselor is not a "treating source", as "only 'acceptable medical sources' can be considered treating sources".  SSR 06-03p.

The ALJ accordingly did not err in failing to give controlling weight to the opinion of Ms. de Lange.  It was not error for him to give significant weight to Dr. Sarver, the examining psychologist, or to the four state agency reviewing psych-ologists.[1]  It was not error for him to give greater weight to the opinions of these five psychologists than to the opinion of Ms. de Lange, or for him to conclude that Ms. de Lange's opinion that Plaintiff suffered from continued and disabling symptoms was

---

[1]  Plaintiff offers no support for his argument that Dr. Sarver's opinion "is in indirect conflict with the treatment notes and opinion letter from his treating phys-icians at Tri County Mental Health", and again implicitly asks the Court to con-sider Ms. de Lange – presumably the source of the "opinion letter" to which he refers – as a "treating physician".  (Doc. 9 at 5.)

not supported by the treatment records demonstrating gradual improvement. Finally, it was not error for him to fail to seek additional evidence from Ms. de Lange as to her counseling records, as she was not a treating source subject to 20 C.F.R. §404.1512(e).

Conclusions. For the reasons set forth above, I find that there is no basis to overturn the decision of the Administrative Law Judge. Accordingly, I **RECOMMEND** that Plaintiff's objections be **OVERRULED**, and that this case be **DISMISSED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).

s/Mark R. Abel\
United States Magistrate Judge
